■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LESLIE TORRES, Appellant.—Judgment, Supreme Court, New York County (Herbert I. Altman, J.), rendered April 14, 1989, convicting defendant, after jury trial, of two counts of murder in the second degree and one count each of attempted murder in the second degree, robbery in the first degree, assault in the first degree and criminal possession of a weapon in the second degree, and convicting defendant, upon his plea of guilty, of four counts of murder in the second degree, and sentencing him, on the trial convictions, to concurrent terms of imprisonment of 25 years to life on each count of murder in the second degree and 12-½ to 25 years on the robbery in the first degree count, to be served consecutively to concurrent terms of imprisonment of 8-⅓ years to life on the attempted murder in the second degree count and 5 to 15 years on the assault in the first degree and criminal possession of a weapon in the second degree counts, and, on the plea convictions, to concurrent terms of imprisonment of 15 years to life on each count of murder in the second degree, to be served consecutively to the sentences imposed on the trial convictions, unanimously modified, on the law, to run the sentence imposed on the robbery in the first degree conviction concurrently with the sentences imposed on the attempted murder in the second degree, assault in the first degree and criminal possession of a weapon in the second degree counts, and to substitute 25 years for the life maximum term imposed on the attempted murder in the second degree count, and otherwise affirmed.

Defendant's convictions arise out of his arrest, following an extensive police investigation, in connection with a week-long

assault, murder and robbery spree involving ten separate incidents. Defendant's admitted method of operation included deliberately shooting his victims, often repeatedly, in the head or face. This was confirmed by overwhelming evidence received both at a pretrial suppression hearing and at trial.

The trial court properly denied defendant's motion for suppression of identification testimony of an eyewitness to the incident that was the subject of the trial on the alleged ground that the lineup was unduly suggestive. Although the witness in question reported to the police that defendant had worn a fleece-lined stonewashed denim jacket and stonewashed denim jeans, the witness' description also included particulars as to defendant's approximate age, height, weight, build, hair color and facial features. A visual examination of the lineup photograph indicates that the fillers were remarkably similar in appearance to defendant. While defendant wore stonewashed denim jeans during the lineup, that item of clothing is commonplace and defendant's jeans were not so dissimilar in appearance from the pants worn by the fillers (including jeans) as to call undue attention to defendant. Indeed, the police officers took pains to arrange a fair lineup representation by seating the subjects and assuring that each of the fillers wore a sweater and went shoeless, as did defendant because his fleece-lined jacket and shoes had been confiscated for evidentiary purposes. Thus, the trial court properly found the lineup to constitute a fairly representative panel (*see, e.g., People v Sease,* 155 AD2d 391, *lv denied* 75 NY2d 818).

The trial court also properly found that defendant's various statements, given to the police and prosecutor after defendant's knowing, intelligent and voluntary waiver of the *Miranda* rights, were admissible. Although the interrogating officer spoke to defendant about accountability to a higher authority when he recognized that defendant was being untruthful about certain details, as the trial court noted, there is no indication of "emotional battering" and no promises or threats were made to defendant, who was at all times treated with courtesy, allowed ample opportunity for rest, and supplied with cigarettes, soft drinks and food, as requested. Considering the totality of the circumstances, including the fact that defendant directed the police (over a period of approximately 2 hours) and, approximately 7 hours later, the prosecutor (who readministered *Miranda* warnings before videotaping defendant's statements) to simply supply a date and location, upon which defendant then freely supplied the de-

tails of the crimes he had committed, as well as his repeated statements that he wished to tell the truth and "get it out of [his] mind", the trial court properly held that defendant's statements were voluntary *(see, e.g., People v Cabrera,* 170 AD2d 386, *lv denied* 78 NY2d 953).

The trial court properly exercised its discretion in allowing cross-examination of defendant regarding three incidents involving assaultive behavior that occurred while defendant was off drugs and incarcerated prior to trial, as highly relevant in connection with defendant's proffered insanity defense based upon his claim that the violent criminal acts charged were out of character and the sole product of drug abuse at the time in question *(see, People v Santarelli,* 49 NY2d 241, 249, *rearg denied* 49 NY2d 918).

The evidence established that defendant's possession of a loaded and operable handgun, and his actions constituting assault and attempted murder, were material elements of the robbery in the first degree conviction. Thus, the sentence imposed on the robbery in the first degree conviction is modified to run concurrently with, rather than consecutively to, the sentences imposed on the attempted murder in the second degree, assault in the first degree and weapon possession counts (Penal Law § 70.25 [2]; *People v Smiley,* 121 AD2d 274, 275).

Additionally, as conceded by the People, the maximum term authorized on the attempted murder in the second degree count (a B felony) is 25 years rather than life (as imposed), and thus the sentence on that count should be modified to 8-⅓ to 25 years imprisonment (Penal Law § 70.00 [2] [b]). Concur— Murphy, P. J., Ellerin, Kupferman, Ross and Rubin, JJ.